United States District Court
Southern District of Texas
**ENTERED**
March 21, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Lequisha Boyd, et al., <br> *Plaintiffs*, | § <br> § <br> § | |
| v. | § <br> § | Civil Action H-22-320 |
| Kilolo Kijakazi, <br> Acting Commissioner of the <br> Social Security Administration, <br> *Defendant*. | § <br> § <br> § <br> § <br> § | |

## MEMORANDUM AND ORDER

Lequisha Boyd appeals the Social Security Administration (SSA) Commissioner's (Commissioner) final decision denying her application for social security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 22, and Defendant's Motion for Summary Judgment, ECF No. 26. These motions are before the undersigned magistrate judge pursuant to the consent of the parties, ECF Nos. 7, 10, 11, and in accordance with 28 U.S.C. § 636(c)(1). Having considered the motions, administrative record, and applicable law, the court affirms the final decision of the Commissioner.

### 1. Procedural Posture

Boyd has filed several applications for social security benefits. She filed her first application for childhood disability benefits and supplemental security income on December 31, 2015. Tr. 379, 474. The alleged disability onset date for that first application is not clear, but it may have been as far back as January 2, 2012. *See* Tr. 230. In any event, it was before December 31, 2015—the application date. The SSA denied that application initially on June 20, 2016, and upon reconsideration on October 24,

2016. Tr. 379, 474. Boyd did not appeal the denial of that application.

Boyd filed a second application for supplemental security income on May 8, 2017, with an alleged disability onset date of May 1, 2017. Tr. 379, 474, 793. The SSA denied the second application at the initial determination stage on August 3, 2017. *Id.* Boyd did not appeal that denial either.

Boyd filed the instant application for supplemental security income and childhood disability benefits on August 29, 2018. Tr. 652–60. She alleged a disability onset date of September 1, 2012. Tr. 652. Relevant to one of the issues in this case is that the alleged disability onset date causes the alleged period of disability in the instant application to overlap with the periods of disability alleged in the previous two applications, both of which were denied and not appealed. Boyd alleged disability due to major depressive disorder, post-traumatic stress disorder, and anxiety, all stemming from a sexual assault that took place at the age of six. Tr. 384–408. Boyd was fourteen years old on the alleged disability onset date. Tr. 431.

The SSA denied Boyd's application at the initial level on November 21, 2018. Tr. 418. The SSA denied the application upon reconsideration on February 11, 2018. Tr. 451-52. Administrative Law Judge (ALJ) Kimani Eason held a hearing on September 11, 2019, in Houston, Texas. Tr. 345–70. At the hearing, the ALJ heard testimony from Boyd, Boyd's mother, and a vocational expert (VE). Tr. 346. Boyd's counsel was present and examined the witnesses. Tr. 345–70.

Boyd testified at the September 11, 2019, hearing that she had never worked and withdrew from school in the ninth grade because of depression, anxiety, and olfactory hallucinations. Tr. 351–52. She obtained a GED in June of 2019. Tr. 351. Boyd testified that she took medication but that it did not relieve her

symptoms. Tr. 354. She explained that she had little to no energy and would normally sleep all day because her symptoms were overwhelming. Tr. 355.

Boyd's mother testified about Boyd's history of mental illness and suicide attempts dating back to 2013. Tr. 357. Boyd's mother testified that Boyd often discussed suicide and had "good days and bad days." Tr. 358. She explained that Boyd would have three bad days per week, during which Boyd would stay in bed and cry. Tr. 358–59. According to Boyd's mother, Boyd's current medications helped to "soothe [Boyd's] mind a little bit" and allowed Boyd to "lay down and relax." Tr. 359. She stated that "when [Boyd is] up, she's a lot better. She's herself." *Id.* Boyd's mother testified that Boyd needed reminders to maintain her personal hygiene. Tr. 360–61. She testified that Boyd did not leave her residence to visit others and would not have others visit her. Tr. 361.

The ALJ issued his decision on November 13, 2019, finding that Boyd was not disabled from September 1, 2012, through the decision date. Tr. 455–67. Boyd requested that the Appeals Council review the ALJ's decision. Tr. 560–62.

On July 15, 2020, the Appeals Council vacated the ALJ's November 2019 decision and remanded the case. Tr. 472–76. The Appeals Council recognized that the 2018 application alleged a disability period that overlapped with each of the first two applications. Tr. 474–75. The ALJ's consideration of the entire period of disability was therefore an implied reopening of the first two applications. *Id.* The Appeals Council remanded so that the ALJ could consider whether any legal reason, such as good cause, existed for reopening the first two applications. *Id.*

The ALJ held additional hearings in January and April 2021. Tr. 371–408. At the January 20, 2021 hearing the ALJ focused on the Appeals Council's remand order and the issue of

implied reopening. The ALJ explained that he was unaware of the prior applications and did not intend to reopen them. Tr. 375–76. The ALJ adjourned the hearing to give Boyd's attorney time to review the records from the prior applications and to determine whether good cause existed to reopen the prior applications. Tr. 381. The ALJ explained that he would not reopen the prior applications based on evidence that had already been considered in connection with the prior applications. *Id.*

At the April 16, 2021 hearing, the ALJ again considered whether good cause existed to reopen the two previous applications. Tr. 388–89. The ALJ and Boyd's attorney agreed that the medical records associated with the prior applications had already been considered in connection with the adjudication of those applications. *Id.* Boyd's attorney argued that the medical evidence already considered with respect to the two prior applications was new and material and that good cause existed to reopen the two previous applications. Tr. 389. The ALJ disagreed and ruled that good cause did not exist and that the applications should not be reopened. Tr. 391–92. The ALJ also denied Boyd's request to reconsider the medical records already considered in connection with those prior applications because they were not relevant to the current application. *Id.*

The ALJ turned to the substance of the 2018 application. Boyd testified again about her mental illness and withdrawal from school. Tr. 394–96. She explained that the sexual assault she endured when she was six affected her performance in school and resulted in absenteeism. *Id.* She reported flashbacks at least three times per week as well as nightmares. Tr. 396–97. She testified that she had attempted suicide several times and had been in several psychiatric hospitals. Tr. 396. She testified that she had difficulty making decisions and had olfactory hallucinations, which she thought may be related to PTSD or anxiety. Tr. 398. She

reported worry and panic attacks with physical manifestations including difficulty breathing and physical rigidity. Tr. 398. She stated that she tried to harm or kill herself on her bad days and was unable to go outside. Tr. 399. She took at least four medications and stated that they were helpful. *Id.*

Boyd testified that she had never lived alone and did not believe she could live alone because of her psychiatric conditions, including hallucinations. Tr. 398–99. She stated that she never visited other people and people did not visit her. Tr. 399–400. Her mother would remind her daily to bathe but she bathed only two times per week. Tr. 400.

The ALJ questioned Boyd about medical records from December 2020, which noted that Boyd reported passing her classes with excellent grades and that she intended to continue her coursework the following semester. Tr. 400–01. Boyd confirmed that she took and passed English and math classes at HCC. Tr. 402–03.

The ALJ asked the VE to consider a person of Boyd's age and education, with no work experience, who could perform work at all exertional levels but who would have the following non-exertional limitations:

> The hypothetical individual can understand, remember, and carry out simple, multi-step instructions in the work environment, free of fast-paced production requirements. The hypothetical individual can make simple, work-related decisions and tolerate simple changes in the work setting. Furthermore, this hypothetical individual can have no more than occasional interaction with coworkers and the general public. There are no limitations in the hypothetical individual's ability to interact with supervisors.

Tr. 404–05.

The VE opined that the hypothetical individual could perform medium, unskilled jobs such as hospital cleaner, store laborer, and laundry worker. Tr. 405. The individual could also be placed on the evening shift to limit interaction with coworkers and the general public. *Id*. Boyd's attorney cross-examined the VE. Tr. 405–08.

The ALJ issued a decision on April 30, 2021, finding that Boyd was not disabled from August 4, 2017, the first day not covered by the previous applications, through the date of the decision. Tr. 178–79. Boyd requested review of the ALJ's decision, which the Appeals Council denied on November 22, 2021. Tr. 1–5, 642–51. Boyd timely filed a complaint and an application to proceed *in forma pauperis* in federal court on January 24, 2022. *See Boyd v. Kijakazi*, 4:22-mc-00157, ECF No. 1 (S.D. Tex. Jan. 24, 2022).

## 2. Legal Standards

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental security income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Disability insurance benefits are also available to an insured person's disabled child or disabled widow. *Id*. Both programs use the same standard to evaluate an applicant claiming disability. *See* 20 C.F.R §§ 404.1520, 416.920. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*,

950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2018). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2018).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. Analysis

### A. Reopening Prior Applications

Boyd argues that the ALJ failed to comply with the Appeals Council's remand order and erred in denying the request to reopen. ECF No. 22 at 6. The remand order stated that the ALJ must "further consider . . . whether the conditions for reopening [Boyd's] prior applications . . . [were] met" and, if so, "further evaluate the

7

prior . . . medical and opinion evidence related to the period at issue." Tr. 475.

As an initial matter, it does not appear that this court has jurisdiction to review the ALJ's decision not to reopen the prior applications. The regulations specifically state that denial of "[a] request to reopen a determination or a decision" is not subject to judicial review. 20 C.F.R. § 404.903(l); *see also* 20 C.F.R. § 416.1403(a)(5). Federal courts thus lack jurisdiction to review a decision not to reopen a claim for benefits. *Weeks v. Berryhill*, 694 F. App'x 340, 342 (5th Cir. 2017) (per curiam) (citing *Califano v. Sanders*, 430 U.S. 99, 107–08 (1977)).

To the extent that the court does have jurisdiction, the court concludes, in the alternative, that there was no error. The ALJ may reopen a prior application for good cause or in cases of fraud. 20 C.F.R. §§ 404.988(a)–(b), 416.1488(a)–(b). There is no allegation of fraud in this case. The question presented here is whether there was good cause to reopen. Tr. 374–75. Boyd's counsel argued that good cause existed because the evidence presented in the prior applications was new and material. Tr. 375. The ALJ explained that "[t]he previous medical evidence that [Boyd's counsel was] referring to [was] already [] considered when the previous applications were denied." Tr. 391. Accordingly, the ALJ found that the evidence was not new, did not find good cause to reopen, and denied the motion. Tr. 179, 391–92. Because evidence already considered in connection with an application cannot possibly be "new" with respect to that application, the court concludes that there was no error.

The ALJ also explained that, because the SSA had previously determined that Boyd was not disabled through August

3, 2017, the earliest disability onset date the ALJ could consider was August 4, 2017. Tr. 179.

## B. Step One

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2018). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2018).

The ALJ found that Boyd had not engaged in substantial gainful activity since August 4, 2017. Tr. 181. This finding is not in dispute.

## C. Step Two

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2018) (citing 20 C.F.R. § 404.1509); 20 C.F.R. § 416.920(a)(4)(ii) (2018) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2018). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 416.920(c) (2018).

The ALJ found that Boyd had severe impairments of major depression disorder, anxiety disorder, and post-traumatic stress disorder. Tr. 182. The ALJ found Boyd's obesity to be non-severe. *Id.* Boyd does not dispute these findings. ECF No. 22.

## D. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). 20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2018); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1 (2018). The Listing describes impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a) (2018). If all the criteria of a Listing section are met or equaled, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2018); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that an impairment meets or equals the specified medical criteria. *Id.*

The ALJ found that Boyd's impairments or combination thereof did not meet or medically equal the severity of any in the Listing. Tr. 182–83. The ALJ considered Boyd's severe and non-severe impairments and found that her non-severe impairment of obesity did not meet any Listing. Tr. 182. That finding is not in dispute.

The ALJ considered Listing section 12.04 (depressive, bipolar, and related disorders); section 12.06 (anxiety and obsessive-compulsive disorders); and section 12.15 (trauma- and stressor-related disorders). Tr. 182–83. These Listing sections each have criteria set forth in paragraphs A, B, and C. Listing § 12.00(A)(2). To be found disabled at this step, a claimant's mental disorder must satisfy the requirements of both paragraphs A and B, or both paragraphs A and C. Listing § 12.00(A)(2). Paragraphs B and C are the same for each Listing the ALJ considered. Thus, if a claimant does not meet either of paragraphs B or C, they do not meet any of the Listing sections under consideration here.

The paragraph B criteria relate to four broad areas of mental functioning a person uses in a work setting. Listing § 12.00(A)(2)(b). Those four areas are the applicant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or

manage oneself. *Id.* The ALJ must evaluate the claimant's ability
to function using this rating scale:

1. No limitation (or none). [Claimant is] able to
   function in this area independently, appropriately,
   effectively, and on a sustained basis.

2. Mild limitation. [Claimant's] functioning in this
   area independently, appropriately, effectively, and
   on a sustained basis is slightly limited.

3. Moderate limitation. [Claimant's] functioning in
   this area independently, appropriately, effectively,
   and on a sustained basis is fair.

4. Marked limitation. [Claimant's] functioning in this
   area independently, appropriately, effectively, and
   on a sustained basis is seriously limited.

5. Extreme limitation. [Claimant is] not able to
   function in this area independently, appropriately,
   effectively, and on a sustained basis.

Listing § 12.00(F)(2). To meet the paragraph B criteria, a
claimant's disorder must result in an "extreme" limitation in one,
or a "marked" limitation in two of the four areas of mental
functioning. *Id.*

The ALJ found that Boyd had only moderate limitations in
each of the four areas. Tr. 182–83. As for understanding,
remembering, or applying information, the ALJ considered Boyd's
mother's function report about Boyd, Tr. 697, and Boyd's own
function report, Tr. 709, and correctly found that Boyd needed
reminders to take her medication and complete her personal
grooming needs. Tr. 182. The ALJ also correctly noted that Boyd
reported in her own function report that she does not handle stress
well. *Id.* (citing Tr. 713). The court also observes that Boyd
reported being able to follow written and spoken instructions.
Tr. 712.

With respect to interacting with others, the ALJ again referred to Boyd's own function report and observed that she does not go out often and does not talk much to others. Tr. 182 (citing Tr. 712). The ALJ also observed that Boyd reported difficulty handling stress. *Id.* (citing Tr. 713). She also had a history of suicidal ideation. Tr. 182. The court notes that Boyd stated she got along well with authority figures. Tr. 713. Boyd's mother reported that, while Boyd had no social activities, she had no problems getting along with family, friends, and neighbors. Tr. 699–700.

As for concentrating, persisting, or maintaining pace, the ALJ noted that Boyd alleged that she does not finish what she starts and that she needs to write down spoken instructions to follow them. Tr. 183 (citing Tr. 712). The ALJ also noted that Boyd needed reminders to take her medication and to complete her personal grooming needs. *Id.* (citing Tr. 697, 709). The court notes that Boyd could shop, handle money, and pay her bills. Tr. 710.

In terms of adapting or managing oneself, the ALJ considered Boyd's July 21, 2017, statement when she presented to MHMRA of Harris County that she felt hopeless and worthless and had feelings of guilt. Tr. 183 (citing Tr. 845). The ALJ observed that Boyd did not have problems with bathing and being able to dress herself. Tr. 183 (citing Tr. 696, 708). The ALJ further observed that Boyd reported she could prepare simple meals such as sandwiches, cereal and noodles. Tr. 183 (citing Tr. 697, 709). The court notes that Boyd also reported being able to wash clothes and dishes, shop, handle money, and draw. Tr. 708–10.

Finding no extreme or marked limitations based on the medical records and the claimant's own statements in her function reports, the ALJ concluded that Boyd did not satisfy the paragraph B criteria for any Listing. Tr. 182–83.

The ALJ also considered the paragraph C criteria. To satisfy paragraph C, the claimant must prove her mental disorders are

serious and persistent. The criteria require a medically documented history of the disorder over a period of at least two years and evidence of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of her mental disorder, and (2) marginal adjustment, *i.e.*, minimal capacity to adapt to changes in her environment or to demands not already part of her daily life. Listing §§ 12.04, 12.06, 12.15. The ALJ concluded that there was no evidence to support the existence of the paragraph C criteria. Tr. 183. Moreover, as for Boyd's ability to adapt to changes in her environment, the court observes that Boyd reported she handled changes in routine "somewhat well," and that her mother stated that Boyd handled changes in routine with a "slow start," Tr. 701, 713.

Boyd challenges the ALJ's findings at step three and argues that the ALJ failed to fully evaluate the Listing because he failed to compare or analyze the Listing criteria to Boyd's symptoms. ECF No. 22 at 16–17. As discussed above in connection with the paragraph B criteria, the ALJ did just that. Moreover, while the ALJ must consider all the evidence, he need not "specifically cite each and every piece of medical evidence considered" and the failure to do so "does not establish an actual failure to consider the evidence." *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)).

Boyd argues, without citing to any evidence, that "there is ample evidence that the plaintiff met or equaled Listings 12.04, 12.06, and 12.15" and that, "[h]ad the ALJ followed the dictates of the Appeals Council Remand Order[,] . . . he would have found plaintiff met or equal[ed] Listing 12.15." ECF No. 22 at 17. As discussed, the ALJ did follow the Appeals Council's remand order. Boyd does not challenge any of the ALJ's specific findings on any element of the paragraph B or C criteria and does not cite specific

testimony, medical opinions, or other evidence to demonstrate that the ALJ erred in his findings. It is Boyd's burden to demonstrate that she meets or equals a Listing section. *See Keel*, 986 F.3d at 555 (stating that the claimant bears the burden on the first four steps). Boyd has not met her burden. There is no legal error and the ALJ's findings at step three are supported by substantial evidence.

### E. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e) (2018) (citing 20 C.F.R. § 404.1545); 20 C.F.R. § 416.920(e) (2018) (citing 20 C.F.R. § 416.945). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, 4 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1) (2018). The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. §§ 404.1520(e); 416.920(e) (2018); *see also* 20 C.F.R. § 416.945(a)(1) (2018); *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c) (2018); s*ee also Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2018) (stating that the RFC determination is the "sole responsibility of the ALJ").

The ALJ determined that Boyd had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> The claimant can understand, remember and carryout simple, multistep instructions in a work environment free of fast[-]paced production requirements. The claimant can make simple work[-]related decisions

and tolerate simple changes in the work setting. The claimant can have no more than occasional interaction with co-workers and the general public. There are no limitations on the claimant's ability to interact with supervisors.

Tr. 183.

In reaching this RFC finding, the ALJ considered Boyd's testimony, her function reports, and her statements to medical providers. Tr. 184–85. The ALJ compared Boyd's self-reported symptoms with the medical evidence. *Id.* That comparison showed that Boyd exhibited symptoms of mental illness but was not as limited as she claimed to be. *Id.* For example, an October 3, 2016, record of an office visit to Legacy Community Health Services showed that Boyd's depressive symptoms were well managed, that she was sleeping and eating well, and that her panic attacks had subsided. Tr. 833. A mental status examination on the same date was overall normal. Tr. 834. A mental status examination in February 2019 showed that Boyd was depressed but otherwise normal. Tr. 961. Boyd was hospitalized for three days in July 2019 when she reported suicidal ideation and suicide attempts. Tr. 1058. Examination at the time showed that Boyd had no known deficits in either her functional or cognitive status. Tr. 1062. Upon release from the hospital, she did not endorse any suicidal ideations, and her psychiatric symptoms had improved or resolved. Tr. 1082. On January 30, 2020, despite being tearful and frustrated with allegations of auditory hallucinations, examination revealed that Boyd suffered from no known cognitive or functional deficits. Tr. 1286-87.

The ALJ also noted that Boyd's mother's function report stated that Boyd did not have problems with personal care, was able to shop, use public transportation, and could draw on her computer. Tr. 186. In January of 2019, Boyd was taking GED

15

classes and was looking for work. *Id.* (citing Tr. 969). The ALJ observed that in December of 2020, Boyd was passing college classes with "excellent grades" and was planning to enroll in further classes. *Id.* (citing Tr. 1421).

The ALJ considered that Boyd did not always take her medication as prescribed. Tr. 186. The ALJ's review of the medical evidence showed that Boyd's "inconsistent regimen may account for breakthrough symptoms rather than the impairments themselves." *Id.* He further found that "the fact that her treating source continues to prescribe medication[] suggests that they believe [medications] will relieve [Boyd's] symptoms." *Id.* The ALJ concluded that Boyd's impairments "account for some limits but are amenable to treatment and are not as limiting as alleged." *Id.*

The ALJ considered medical opinions and prior administrative medical findings. Tr. 187. As for Boyd's low Global Assessment of Function (GAF) scores, the ALJ concluded that such scores are "highly subjective and less clinically helpful than the mental status examination. Moreover, they were not correlated with disability under Social Security Guidelines." Tr. 187. Accordingly, he found the scores to be not persuasive. *Id.*

The ALJ considered Boyd's mother's testimony and function report. Tr. 187. According to Boyd's mother, Boyd was extremely limited, would spend most of the day in bed, and needed reminders to perform even basic grooming. Tr. 695–702. The ALJ found the function report and the corresponding testimony to be inconsistent with the objective medical evidence, which showed "mild limitations in functional status, no cognitive issues and that the claimant felt ok when her medication was adjusted." Tr. 187. For the latter proposition, the ALJ cited several medical records. A January 15, 2019 examination record from Harris Center for Mental Health showed that Boyd was depressed but was cleanly groomed and dressed, was cooperative, had normal speech, had

logical thought processes, experienced no delusions or hallucinations, was not then experiencing suicidal ideations, was alert, had only mild limitations in performing activities of daily living and social interaction, and had no cognitive impairments. Tr. 970–72. A September 4, 2019, record from the same provider reported that Boyd was in a frustrated state of mind and was experiencing paranoid delusions, but otherwise had logical thought processes and no hallucinations, was alert, had good insight and judgment, and had no known deficits in either her functional status or her cognitive status. Tr. 1244–47.

The ALJ considered records of Roberto Flores, M.D.'s examination of Boyd. Tr. 187. The record states that Boyd was "unable to function and most likely cant [sic] work." Tr. 1283. The ALJ found that the foregoing statement was vague and did not quantify Boyd's limitations. Tr. 187. He also found it to be inconsistent with other findings that Boyd did not have any known deficits in her functional or cognitive status. *Id.* The court notes that the part of the record stating that Boyd cannot work is not Flores's opinion. Rather, because it is under the heading of "History of Present Illness," it appears to be Boyd's self-reported mental status. Tr. 1283. In the section of the record reporting Flores's examination findings, it states that Boyd had "no known deficits" in her cognitive or functional status, including occupational limitations and limitations in performing activities of daily living. Tr. 1286–87.

Finally, the ALJ considered the State Agency Medical Examiner opinions, which limited Boyd to detailed, but not complex work. Tr. 187. He found them to be not persuasive because the examiners did not examine or provide treatment to Boyd, and because the examiners did not have access to all of the medical records. *Id.*

The ALJ engaged in a thorough analysis of the medical records. He considered every category of information available and carried out his duty to weigh the evidence before him in formulating the RFC. There is no legal error, and the RFC is supported by substantial evidence.

Boyd argues that the ALJ's RFC assessment is erroneous because it is not supported by any medical opinion and is improperly based on Boyd's daily activities and the ALJ's lay medical opinion. ECF No. 22 at 17–23. The regulations do not prohibit the ALJ from assessing the claimant's RFC based on other record evidence when he finds all medical opinions to be unpersuasive. In fact, the regulations place the responsibility on the ALJ to assess a claimant's RFC based on all the relevant evidence. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946 (2018); see also *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). The absence of a medical opinion or other medical source statement does not make the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Where the record lacks a medical opinion about the claimant's ability to work, the court's inquiry focuses upon whether the ALJ's decision is supported by substantial evidence in the existing record. *Id.* Accordingly, the ALJ did not err in considering evidence of Boyd's daily activities in addition to the medical evidence in determining the RFC. The lack of a medical opinion does not render the RFC erroneous if it is, as here, otherwise supported by substantial evidence.

Boyd argues that the ALJ did not properly consider the medical opinion evidence. Under the relevant regulation, the ALJ must consider medical opinions, including those of treating physicians, using five listed factors, giving the most weight to the supportability and consistency of the opinion. *See* 20 C.F.R. §§ 404.1520c(b)–(c), 416.920c(b)–(c) (2018). Here, as discussed above, the ALJ articulated how persuasive he found the medical

opinions and articulated the supportability and consistency of each. He complied with the regulations. The court finds no error.

Boyd argues that the ALJ erred by not considering the July 2017 consultative examination performed by Cecilia Lonnecker, Ph.D. First, that examination was performed outside the relevant time period and was not part of the current record, so it is not clear why the ALJ would need to consider it. Tr. 1557. Moreover, Lonnecker did not say that Boyd could not work. Tr. 1560. Instead, Lonnecker opined that "[t]he claimant may have difficulty in a competitive work setting." *Id.* Lonnecker further stated that Boyd could understand, carry out, and recall instructions, and had fair insight. Tr. 1559–60. Consideration of Lonnecker's opinion would not have altered the RFC.

Boyd seizes on the ALJ's use of the phrase "wax and wane" and argues that, under *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003), the ALJ was required not only to determine whether Boyd could find work, but also that she could maintain competitive employment. The problem with this argument is that the ALJ referred to Boyd's symptoms as "waxing and waning" in the context of his consideration of medical evidence that said Boyd had no functional or cognitive deficits at all. He explained that Boyd did have some symptoms and even required medications. Tr. 186. He found that Boyd's symptoms could result from her impairments, but "not to the disabling extent alleged." *Id.* The ALJ did not find that Boyd can work during some periods but not at all during others. The ALJ found that Boyd could work. *See Frank*, 326 F.3d at 621 (concluding that the ALJ need not make a finding about the individual's ability to maintain employment in cases where there is no evidence that the person can work for short spans but cannot hold a job). This was not a case requiring the ALJ to make a separate finding that Boyd could maintain employment.

Boyd makes several other arguments critical of the ALJ's RFC assessment, but these are merely disagreements with the ALJ's analysis. It is not the court's role to weigh the evidence, but only to determine whether substantial evidence supports the ALJ's RFC determination. It does.

## F. Step Four

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2018); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2018). If the claimant cannot perform her past work, the ALJ proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1) (2018).

The ALJ found that Boyd has no past relevant work. Tr. 187. This finding is undisputed.

## G. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)); *see also* 20 C.F.R. § 416.920(a)(4)(v) (2018). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); *see also* 20 C.F.R. § 416.920(g)(1) (2018).

The ALJ found that Boyd could perform jobs that exist in significant numbers in the national economy. Tr. 188–89. The ALJ relied on the VE's testimony that an individual of Boyd's age, education, work experience, and RFC would be able to work as a hospital cleaner (evening shift), store laborer (evening shift), or laundry worker. Tr. 188, 405.

Boyd argues that the ALJ's step-five findings are erroneous because they are based on an erroneous RFC finding. ECF No. 22 at 23. The court found no error in the RFC. Boyd also argues the step-five findings are in error because, as the VE testified during Boyd's cross examination, an individual who misses two to three days of work per month will be unable to perform any work in the national economy. ECF No. 22 at 23; Tr. 407. The ALJ did not find that Boyd would be required to miss two to three days of work per month.

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and Boyd's attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination). Accordingly, the ALJ's findings at step five are supported by substantial evidence.

### 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court denies Boyd's Motion for Summary Judgment and grants the Commissioner's Motion for Summary Judgment. The Commissioner's decision is **AFFIRMED**.

Signed at Houston, Texas on March 21, 2023.

Peter Bray
United States Magistrate Judge